All right, our next case before the break is 23-1295, United States v. Odifu. Mr. Jackson, you may proceed. May it please the court, Robert Jackson on behalf of Defendant Appellant Odifu Odifu. This case involves Mr. Odifu's theft of a vehicle at gunpoint following a minor traffic accident at a busy intersection in Aurora. There's no dispute about those basic facts. Mr. Odifu proceeded to trial on the theory that he did not possess the requisite mental state to be found guilty of carjacking. Carjacking is a specific intent offense and the government was required to prove beyond a reasonable doubt that Mr. Odifu intended to kill or seriously harm the driver if necessary to steal the vehicle. Mr. Odifu has a history of mental illness and he sought to introduce mental health evidence at trial to negate the specific intent element of carjacking. However, the district court erroneously excluded all mental health evidence from the trial by finding that Mr. Odifu could not establish a, quote, clear link between his mental condition and the mens rea element of carjacking. Second and further affecting Mr. Odifu's ability to present this defense was that the jury was not adequately instructed as to the specific intent element of carjacking. Both errors served to call into question the reliability of Mr. Odifu's convictions for the carjacking and the 924C offenses. I'd like to spend my time focusing on ground one. The district court abused its discretion in excluding all mental health evidence from trial. The Insanity Defense Reform Act that was passed in 1984, it narrowed the affirmative defense of insanity to only instances in which the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. And this Insanity Defense Reform Act eliminated all other affirmative defenses based on mental disease or defect, including defenses such as, for example, diminished capacity. However, this court, in line with other courts of appeals, has acknowledged that mental health evidence not rising to the level of insanity remains admissible when it negates the essential element of specific intent. This is so because mental health evidence rebutting the mens rea of specific intent does not serve as an affirmative defense. Why would Odifu's, you know, delusion or perception that, you know, these people were, you know, harassing him or out to get him, I mean, even if he believed that and had a mental illness that caused him to believe that, couldn't he still, how would that negate his specific intent to steal the truck, you know, to either eradicate the threat they posed or to escape from these people? With the carjacking statute, there's two elements in play here, and they're somewhat similar but they're very distinct. We first have an intimidation element. That's if the vehicle has to be taken by intimidation or threat. And that's very different. And he grabbed the gun, right? Very much, yes, your honor. And this was all on videotape. And the jury was shown videotapes. There were two views. There was a traffic camera that caught the initial interaction and then a security camera in a business that caught the actual brandishing of the firearm and the removal of Mrs. Strada from the truck. But apart from the intimidation element, now we move into the specific intent element that Mr. Odafu himself, not from the objective of reasonable bystander, but he must have specifically intended to cause harm or death to Mrs. Strada if she didn't give up the vehicle, if that was necessary to get the vehicle. Here, the evidence shows, and this was all in the trial record, when Mr. Odafu approached that truck, he put the pistol in through the window to Mrs. Strada. She pushed that pistol away multiple times, at least twice. She argued with Mr. Odafu. If he intended to kill or kill Mrs. Strada, he would have had a reasonable opportunity to do so, but he chose not to. In fact, his illness might have made him more likely use lethal force, wouldn't it? I mean, we're grateful he didn't, but given the nature of your experts' reports, I think it's more likely he might have used lethal force to escape. I think that's a great question, your honor. And I think that's exactly why the jury here needed to hear the evidence from these mental health experts. The jury could hear the mental health experts talk about Mr. Odafu's schizophrenia, his belief that this was a plot, and that would assist or help the jury in deciding whether or not Mr. Odafu had the specific intent to harm or kill. In this argument, almost counsel sounds like he had to carry through with actually killing a person before you've got intent, specific intent, to harm. I mean, I'm not quite tracking with your response to Judge Temkovich. He either has specific intent, but the fact that the lady moved the gun back or forward just might not have been real wise, but at least she was brave enough to do that. But that still indicates an intent to harm her with that gun, doesn't it? That's what the jury was told. I'm not sure it does indicate an intent to harm her, your honor. Well, if it doesn't, then you're saying you've got to carry through with actually killing her. No, I'm saying, your honor, that there's instances in which the defendant is bluffing, and this court is bluffing. Give up your car or I will shoot, an empty threat. And you'd got the car if it were me. He did get the car, that's correct, your honor. And that adds another strange element to this carjacking case. Mr. Odafu had his own car. He didn't need Mrs. Estrada's car. He was driving his own car. But as for this bluffing, the Supreme Court talked about it in Holloway. This court's talked about bluffing in Malone. And just recently in the unpublished case of Bush, case number 22-2161, the courts again talked about bluffing. And the court noted that this bluffing may satisfy the intimidation element, but it doesn't necessarily satisfy the specific intent element, the intent to harm or kill. I would like to talk some about this mental health evidence, the evidence that wasn't presented here. It's important evidence. Mr. Odafu proffered the reports or a report compiled by two psychiatrists at the University of Colorado Medical Center, that's Dr. Martinez and Dr. Mayer, and then a report from a psychologist, Dr. Gray. These reports, the jury could have heard them and determined that Mr. Odafu was bluffing with his statements and his actions. They just intended to thwart what he believed was this plot against him by the occupants of this pickup truck that he just got in a wreck with. He thwarted this plot by separating Mrs. Estrada and Mr. Reyes from their vehicle. The proffered experts could have explained that Mr. Odafu's mental health conditions rendered the scenario plausible. It doesn't look all that plausible when we see the videotape. That's why we need the mental health evidence. Isn't that the kind of evidence that the Insanity Defense Reform Act was intended to restrict? But left intact, even after the Insanity Defense Reform Act, is this narrow pathway when we're talking about specific intent offenses. And this court has already decided that if it's a specific intent offense, that the defendant can present some mental health evidence that bears upon the issue of specific intent, apart from the Insanity Defense Reform Act. The psychiatrist, they could have explained that Mr. Odafu began having auditory hallucinations when he was just 13 years old. And those symptoms got worse from there. They could have explained that Mr. Odafu's father suffered from similar conditions to Mr. Odafu, including bipolar disorder, extreme paranoia. The father's most extreme behavior consisted of the kidnapping of Mr. Odafu and his younger brother when Mr. Odafu was just seven years old. And the father took the children out of state. The father's mental illness in that episode perhaps corroborate or lend credence to Mr. Odafu's defense that he was suffering mental health conditions himself, causing him to believe they needed to take action against the drivers of the pickup truck, while at the same time lacking the specific intent to harm or kill as required by the statute. Further establishing his mental health conditions were that records close in time, jail records close in time to the offense showed he was suffering from bipolar disorder and suspected of having schizophrenia. These psychiatrists that were proffered, they did a retrospective mental health evaluation. They diagnosed Mr. Odafu with schizophrenia and experienced an acute episode of schizophrenia at the time of the offense, trauma and stress related disorder, and cannabis use disorder. And based on those diagnoses, their opinion was, quote, Mr. Odafu due to his mental illness misinterpreted what most people would see as a simple fender bender. Mr. Odafu interpreted this minor traffic accident as being evidence of a nefarious plot against his life that required him to do something before something was done to him. And Mr. Odafu's illness, according to the psychiatrists, affected his thoughts or his, quote, rational thoughts, decision making and behavior. When I'm hearing these mental health experts talk about an effect on his rational thought process, to me that thought process is also the process or his ability to inform specific intent. Sounds like evidence that would go to a, you know, a complete insanity defense. Did he argue that here? No, Your Honor. And very candidly, these mental health experts, they quoted Mr. Odafu from their evaluation of him. He said, I knew it was wrong to hold a pistol to another person's head. I knew it was wrong to take a pickup truck. Right there, that's the core of the Insanity Defense Reform Act. If the defendant knows their actions are wrong, there is no affirmative defense of insanity. Well, if he knew it was wrong, then could he, the jury found that he had the specific intent to commit the car jacking? Sure, Your Honor, but I think the jury needed the assistance of these mental health experts to help them in this hard decision as to what Mr. Odafu's intent was. Not what they think it may have been from seeing these videos, but they needed some help to put this behavior in context. That leads me then, that question, and you can help me out because in looking at it and looking at the medical reports, I don't see anywhere where they finally told the district judge in regards to the hearing as to the evidence that was going to come in that this conduct affected his specific intent. They didn't say that. They told us all about what the problem was and all these things, but nowhere, and this is where I . . . can you show me in their report where they said in this conduct is lacking in specific intent. The trial court, as I looked at it, said you haven't shown that anywhere. You just showed a medical report, so help me out there. Judge, you've done a very thorough reading of the record and you're absolutely correct. These experts don't talk about specific intent in their reports. That's not there, and that's what the trial court faulted them for not doing. Well, is that wrong? I think so, and I think that's too stringent a standard put on Mr. Odafu by the trial court. What's your best case? That'll help me out a lot if you've got a good case that tells me that. United States v. Ray out of the Ninth Circuit speaks about exactly that. Ninth Circuit? Yes, sir, and that's cited in the brief. And the name of the case again, U.S. . . . . . . v. Ray. I believe that's R-E-Y. I remember that. And I think that's just too much. That's too stringent a standard. We have this competing rule of evidence, 704B, that says that an expert can't make an ultimate opinion as to an element of the presence or absence of an element of an offense, and that's essentially what the experts are faulting them for not having that in their reports, while at the same time, the psychiatrists are saying, well, there's an impairment in Mr. Odafu's decision-making and thoughts. It sounds a lot to me like his thoughts would go to, well, did he think that he intended to harm or kill the driver if necessary? There was also a psychologist that was proffered. That psychologist did a lot of testing, and from that point of view, the testing found compelling data, on top of what the psychiatrist found, also showing a thought disorder. So we have both the psychiatrist and the psychologist saying there's something wrong with the way Mr. Odafu's thinking. You know, the district court also ruled against you under Rule 403. How do you overcome that? I think that's wrong in this instance, Your Honor. We have this court's opinion, and I think that's wrong in this instance. There's a framework that's laid out in Brown about how the district court reviews this mental health evidence, and essentially, Brown says, well, the district court's a gatekeeper. This can be a confusing thing. It's ripe for abuse, so the district court needs to make sure we're not confusing the jury before this evidence comes in. So if we satisfy Brown and this evidence is coming in to negate specific intent, that's the end of it. We don't double dip under Rule 403 and say, well, it's not going to confuse the jury under Brown, but under Rule 403, this is too confusing to come in. Isn't any piece of evidence subject to that standard? I think the standard's already... I mean, it's admissible. I mean, you're arguing it's admissible. That doesn't mean you would get evade 403. I believe the standard's already been met by the time we've crossed Brown, Your Honor. That would be my position. I see my time's gone over. Thank you, Counsel. Thank you, Your Honor. May it please the Court. Kyle Brenton for the United States. Your Honor, I want to go back to Judge Tymkiewicz's very first question to my opposing counsel, because I think it really puts the finger right on the heart of this case. How did the cycle of the trial go?   How did the psychological evidence that Mr. Odifu offered negate specific intent? Now, I listened very hard. I did not hear an answer to that question. And I understand why I didn't hear an answer, because the answer is, it didn't. The psychological evidence here... Well, let me take a step back. Under Brown, what a defendant must establish to allow psychological evidence short of insanity to be admitted is the defendant has to clearly demonstrate how that evidence, if believed, would negate specific intent. So that's setting up a simple comparison. What is the specific intent the government has to prove, and how does the psychological evidence negate it? Now here, under Section 2119, the specific intent the government had to prove was that as he walked up to that car, Odifu intended to shoot or kill, if necessary, to take the car. That's 2119 and Holloway. What was the psychological evidence here? Odifu suffered from paranoia. He misinterpreted actions that most people would see as non-threatening as threatening. He saw this minor fender-bender as a plot against him. He had to thwart. He was impulsive, reckless, had diminished capacities for rational thought and decision-making. Now, the core problem for Odifu is it is entirely possible to believe all of those things and still believe that as he walked up to that car and racked the slide of that pistol, he intended to shoot, if necessary, to get the car. All of the psychological evidence here, even if he had been able to present it, even if the jury had believed every word of it, it would not have precluded them from finding that he acted with the required specific intent. So that is well short of the standard in Brown of clearly demonstrate how the psychological evidence would negate specific intent. And that, frankly, I think disposes of this issue. I don't, I just, I think it's as simple as that, Your Honors. I think the court also asked about 403. I think this case was a prime candidate for Rule 403, just for the reasons that I think we just heard from opposing counsel in terms of describing this evidence. So this jury was supposed to hear evidence of Mr. Odifu's father's mental health, history, things that happened to him when he was five years old, things, you know, far removed in time from this incident, all of these things. And also he was going to proffer testimony from family members about these things, not just these experts. And, you know, that's what the district court said. This stuff is so far afield and so dangerous. I mean, every court to address this has recognized that this kind of psychological evidence, it's inherently malleable, imprecise concepts, and it poses a massive risk of the jury ruling on an impermissible basis. Bias, sympathy, or frankly, excusing conduct based on mental health where the defendant is specifically not arguing that they're not criminally responsible for their actions. But we do have Brown, and it does permit this evidence to come in in certain circumstances. And it seems like the way you just framed it for me that Brown's basically a nullity. I don't know what kind of evidence could get in under the Brown framework in the government's view. Absolutely not, Your Honor. I think we need to take a step back and understand what is Brown doing versus what does 403 do. And I think my opposing counsel is arguing that Brown essentially takes the place of 403, that if this evidence passes muster under Brown, set 403 aside. I don't think that's the case. There's nothing in Brown that suggests that's the case. I think Brown is fundamentally a very specific relevance test. It's like a 401, frankly, test. And what it's testing for is does this evidence go to the single narrow purpose under which it's allowed to be admitted, which is negating specific intent for specific intent crimes. Now, that it qualifies for that, that it may qualify for that, does not mean that it automatically passes muster under Rule 403. I mean, you can imagine a whole universe of psychological evidence that maybe there's an argument that it connects to intent, but it's still, it's inflammatory, it seeks sympathy and bias, all those things that are prevented by Rule 403. Well, give me a hypothetical piece of evidence that you think of psychological evidence that would have worked here. Well, I think that's a… Put his hat on. Absolutely, Your Honor. I mean, I will start out by pointing out that a number of courts have said that it's actually quite difficult to come up with examples here. Yeah, that's why I'm asking you. Well, of course. There are two cases that I think get referred to pretty consistently. The Staggs case from the Seventh Circuit, and there's also the Frisbee case. Now, both of these are cases that predate the Insanity Defense Reform Act, so they're not excellent examples, but they are talked about in the subsequent cases. In Staggs, it was a case of a Marine deserter who, when the authorities caught up with him, the government argued that he pointed a gun at the officers and thus intentionally put them in apprehension of physical harm. He offered… His version of events was he was not lifting the gun at the officers, he was lifting it to point it at himself, and he proffered psychological evidence that he suffered from a mental illness that made him more likely to harm himself than be aggressive toward others. So ultimately, in the cases that have discussed that case, that is a type of psychological evidence that could be admitted because it goes to what is it more likely or not that he was doing in that moment. Was he lifting the gun to point at the officers? Was he lifting it to point it at himself? The Frisbee case is another one that gets mentioned. That's a locked room murder case, essentially, where the defendant was in the room with the decedent and was charged with a specific intent crime, and his defense was, I suffer from schizophrenia, I have blackouts where I am not aware of my actions. And that was considered admissible to whether he had the specific intent necessary for the crime. Again, it goes specifically to the intent. I mean, if asked to sort of hypothesize different facts here, if, for example, the psychologist had opined something to the effect of Mr. Odifu suffered from the very specific delusion that the gun in his hand did not work, but he knew that everyone else thought that it would, maybe that could have gone, could have been admissible under Brown. But again, that is very far afield from what the experts here actually opined. I think here there is just no way to draw a connection between the expert reports and the specific intent the government had to prove. So I think the court properly exercised its discretion in excluding that evidence under both Brown and 403. I know we haven't discussed the jury instruction issue. I'm happy to answer any questions on that, but otherwise I'm also happy to take my seat. Thank you, Counsel. Thank you, Your Honor. Counsel is excused and the case is submitted. We'll take a ten-ish minute break before the next case, which is Gay.